UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLA MACK and FLOYD MACK, | No. 2:16-cv-02504-TLN-DMC |
| Plaintiffs, | |
| v. | **ORDER** |
| TOWN OF PARADISE; TOWN OF PARADISE POLICE DEPARTMENT; and SERGEANT ROBERT PICKERING, | |
| Defendants. | |

This matter is before the Court on Defendants Town of Paradise ("the Town"), Town of Paradise Police Department ("the Police Department"),[1] and Sergeant Robert Pickering's ("Sergeant Pickering") (collectively, "Defendants") Motion for Summary Judgment, or in the alternative, Partial Summary Judgment. (ECF No. 15.) Plaintiffs Carla Mack ("Mrs. Mack") and Floyd Mack ("Mr. Mack") (collectively, "Plaintiffs") filed an opposition. (ECF No. 19.) Defendants filed a reply. (ECF No. 21.) For the reasons set forth below, Defendants' Motion for Summary Judgment is GRANTED in part and DENIED in part.

---

[1] In a footnote, Defendants state, "[The Town] asks the Court and counsel to note that [the Police Department] is not an independent legal entity and has no standing to have an action filed against it." (ECF No. 15-1 at 2.) Defendants do not make any arguments, cite any legal authority, or otherwise explain the purpose of this footnote. It is unclear what, if anything, Defendants are requesting. Therefore, the Court declines to address Defendants' request.

1

**I.   FACTUAL AND PROCEDURAL BACKGROUND**[2]

On September 28, 2015, Sergeant Pickering responded to a 911 call regarding a woman who was creating disturbances in a recreational vehicle trailer park.  (ECF No. 19-1, Statement of Undisputed Facts ("SUF"), at ¶¶ 1, 7, 11).  After entering the park, Sergeant Pickering encountered a young man who told him the woman had "been running around naked" and directed Sergeant Pickering to her general location.  (*Id.* at ¶¶ 8–10.)  Sergeant Pickering proceeded into the park and encountered Mrs. Mack, who was fully clothed.  (*Id.*)  It is undisputed that he initially did not know Mrs. Mack's identity or whether she was the subject of the 911 call.  (*Id.* at ¶¶ 12, 24.)

From his patrol car, Sergeant Pickering asked Mrs. Mack, "Where is she at?" and let her know he was looking for "Carla Mack."  (ECF No. 19-1, SUF, at ¶ 12.)  Mrs. Mack replied, "There is no Carla Mack here," to which Sergeant Pickering asked, "What is your name?"  (*Id.* at ¶ 13.)  Mrs. Mack answered, "Awesome."  (*Id.*)  Sergeant Pickering asked Mrs. Mack to step back and exited his patrol car to speak with her.  (*Id.* at ¶ 14.)

The parties dispute what occurred after Sergeant Pickering exited the vehicle.  Sergeant Pickering asserts that while he was on the radio after exiting his patrol car, Mrs. Mack walked directly into him and physically grabbed him.  (ECF No. 15-5, Sergeant Pickering Decl., at ¶ 8.)  In response, he pushed Mrs. Mack to the ground and stated, "What the hell?"  (*Id.*)  Sergeant Pickering then told Mrs. Mack to stand up and began restraining her against the patrol car to protect himself from being accosted again.  (*Id.*)  Sergeant Pickering asserts Mrs. Mack grabbed his penis while he attempted to restrain her, which surprised and shocked him.  (*Id.* at ¶ 9.)  Sergeant Pickering restrained Mrs. Mack on the ground to prevent her from attacking him again or reaching for his firearm.  (*Id.*)  As Sergeant Pickering attempted to restrain Mrs. Mack, he called for assistance by radioing "Code 3 combative subject" to his colleagues.  (*Id.*)

After he restrained Mrs. Mack, Sergeant Pickering again asked, "What is going on?"

---

[2]   Defendants request the Court note that Plaintiffs incorrectly numbered their response to Defendants' Undisputed Material Facts in the First Cause of Action beginning at ¶ 5.  (ECF No. 19-1.)  The Court notes the incorrect numbering and refers to the paragraphs as they are numbered in Plaintiffs' response.

1  (ECF No. 15-5 at ¶ 10.)  At that time, Sergeant Pickering heard Mr. Mack say, "She had a
2  nervous breakdown." (*Id.*)  Sergeant Pickering kept Mrs. Mack restrained and handcuffed on the
3  ground until backup assistance arrived.  (*Id.* at ¶ 11.)  After backup officers arrived with an
4  ambulance, emergency medical personnel moved Mrs. Mack from the ground onto a gurney.  (*Id.*
5  at ¶ 12.)  Sergeant Pickering had no further contact with Mrs. Mack after the medical personnel
6  began to move her onto the gurney.  (*Id.*)  Sergeant Pickering contends that during the physical
7  encounter he had no reason to believe or suspect Mrs. Mack was suffering from a mental health
8  episode or disability, and he used only the degree of force reasonably necessary to protect
9  himself.  (*Id.* at ¶¶ 13, 15.)

10  Mrs. Mack offers a very different version of events.[3]  Mrs. Mack states that when she saw
11  the police arrive, she approached them saying hello, asking their names, and believing they had
12  arrived to take her to the hospital.[4]  (ECF No. 19-2, Carla Mack Depo., at 32:6–11.)  Mrs. Mack
13  asserts that when she started walking towards Sergeant Pickering, he pulled her arms behind her
14  back and lifted her off the ground by her arms before handcuffing her.  (*Id.* at 32:12–16.)  She
15  asserts that it was painful, and she blacked out.  (*Id.* at 32:16.)  Mrs. Mack claims she became
16  conscious again as Sergeant Pickering slammed her down on the hood of the car and told her to
17  stop resisting.  (*Id.* at 32:20–22.)  Mrs. Mack claims she said, "Call Feaster" and "He knows us,"
18  before blacking out again.  (*Id.* at 32:23–24.)

19  When Mrs. Mack next regained consciousness, she asserts that she was on the ground
20  with her face in the dirt, Sergeant Pickering's knee was on her back, and she could not breathe.
21  (ECF No. 19-2 at 32:25–33:2.)  Mrs. Mack asserts her husband said, "Get off of her" and "You

---

[3] Defendants object to Plaintiffs' deposition excerpts on the grounds that the cited material is irrelevant and lacks foundation.  (ECF No. 21-2.)  Defendants cite to Evidence Code §§ 210, 350, 352, and 403.  It appears Defendants improperly cited to the California Rules of Evidence, which do not apply to these proceedings. *See* Fed. R. Evid. 101.  Regardless, the Court relies on portions of the transcripts that are relevant and are based on Plaintiffs' personal knowledge in ruling on the instant motion.  (ECF No. 19-2.)  Therefore, the Court OVERRULES Defendants' objections.

[4] It is unclear from the transcript if Mrs. Mack believed that multiple officers were present during the initial encounter, but it is undisputed that Sergeant Pickering was alone during the incident. (ECF No. 19-1, SUF, at ¶ 7.)

are going to kill her," at which point Sergeant Pickering stood up and ordered Mrs. Mack to her feet. (*Id.* at 33:3–5.) Mrs. Mack reports she tried to comply but could not, so Sergeant Pickering pulled her up by her arms to stand. (*Id.* at 33:5–7.) At that point, other officers and the ambulance had arrived. (*Id.* at 33:9–10.) Mrs. Mack asserts the police took her by her arms and feet and swung her up on the gurney still in handcuffs. (*Id.* at 33:11–14.) Mrs. Mack does not remember walking into Sergeant Pickering or attempting to grab his genitals during the incident. (*Id.* at 34:16–35:5.)

Mr. Mack also witnessed the event. In his account, as Mrs. Mack began walking towards the front of the patrol car, Sergeant Pickering said something that Mr. Mack could not hear and grabbed Mrs. Mack's arm. (ECF No. 19-2, Floyd Mack Depo., at 18:7–23.) Mr. Mack denied seeing Mrs. Mack walk into Sergeant Pickering or attempt to grab his genitals, but he heard Sergeant Pickering yell, "You touched my penis." (*Id.* at 22:16–23:2.) Mr. Mack asserts he yelled at Sergeant Pickering to get off Mrs. Mack and said, "You are going to kill her" while Sergeant Pickering was "mashing" Mrs. Mack's face into the dirt. (*Id.* at 30:2–11.)

In addition to the parties' accounts of the incident, Defendants also submitted the video and audio recordings captured by Sergeant Pickering's body camera. (ECF No. 16.) The Court has reviewed the body camera footage. As an initial matter, the Court notes the audio and video quality is not clear and the footage has several seconds of darkness during the very short interaction between Sergeant Pickering and Mrs. Mack.

In the footage, Mrs. Mack has gray hair, appears to be over sixty, and also appears overweight. She is barefoot and does not appear to have a weapon during the incident. Mrs. Mack approaches Sergeant Pickering slowly with her arms outstretched in front of her — almost as if to embrace him — as he exits the vehicle. He reacts by pushing her, and she falls to the ground. He appears to help her stand while saying, "Not cool." Mrs. Mack says, "Thank you" and "I'm sorry" as Sergeant Pickering attempts to handcuff her on the hood of the patrol car. At this point, the footage does not show either parties' actions clearly, but Sergeant Pickering yells as the video goes black. Later, Mrs. Mack is on the ground while Sergeant Pickering yells, "She touched my penis." During the encounter, Mrs. Mack yells, grunts, and calls for "Feaster." The

1  footage does not show Mrs. Mack being put on the gurney after the ambulance arrived.

2  On October 20, 2016, Plaintiffs filed the following claims against Defendants: (1) civil
3  rights violations pursuant to 42 U.S.C. § 1983; (2) negligence; (3) battery; and (4) negligent
4  infliction of emotional distress.  (ECF No. 1.)  On December 11, 2017, Plaintiffs filed an
5  amended complaint (ECF No. 12), which Defendants answered (ECF No. 14).  On June 13, 2018,
6  Defendants filed the instant motion for summary judgment.  (ECF No. 15.)

7  **II.     STANDARD OF LAW**

8  Summary judgment is appropriate when the moving party demonstrates no genuine issue
9  as to any material fact exists and the moving party is entitled to judgment as a matter of law.  Fed.
10 R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Under summary
11 judgment practice, the moving party always bears the initial responsibility of informing the
12 district court of the basis of its motion, and identifying those portions of "the pleadings,
13 depositions, answers to interrogatories, and admissions on file together with affidavits, if any,"
14 which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v.*
15 *Catrett*, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof
16 at trial on a dispositive issue, a summary judgment motion may properly be made in reliance
17 solely on the pleadings, depositions, answers to interrogatories, and admissions on file."  *Id.* at
18 324 (internal quotations omitted).  Indeed, summary judgment should be entered against a party
19 who does not make a showing sufficient to establish the existence of an element essential to that
20 party's case, and on which that party will bear the burden of proof at trial.  *Id.* at 322.

21 If the moving party meets its initial responsibility, the burden then shifts to the opposing
22 party to establish that a genuine issue as to any material fact actually does exist.  *Matsushita Elec.*
23 *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities*
24 *Serv. Co.*, 391 U.S. 253, 288–89 (1968).  In attempting to establish the existence of a factual
25 dispute, the opposing party may not rely upon the denials of its pleadings, but is required to
26 tender evidence of specific facts in the form of affidavits and/or admissible discovery material in
27 support of its contention that a dispute exists.  Fed. R. Civ. P. 56(c).  The opposing party must
28 demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the

5

suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 251–52.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank*, 391 U.S. at 288–89. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with any applicable affidavits. Fed. R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982). The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts pleaded before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987). Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* at 587.

**III.   ANALYSIS**

Defendants move for summary judgment as to all of Plaintiffs' claims. The Court will address each claim in turn.

      B.    <u>Mrs. Mack's § 1983 Claim</u>

Section 1983 provides that "[e]very person who, under color of any [state law] subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights,

6

privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured[.]" 42 U.S.C. § 1983. "Section 1983 does not create any substantive rights, but is instead a vehicle by which plaintiffs can bring federal constitutional and statutory challenges to actions by state and local officials." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

Here, Mrs. Mack claims Sergeant Pickering used excessive force in violation of the Fourth Amendment. A Fourth Amendment claim of excessive force is analyzed under the framework set forth in *Graham v. Connor*, 490 U.S. 386 (1989). Under *Graham*, the Court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396. Courts carefully examine the facts and circumstances of each case, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*; *see also Miller v. Clark County*, 340 F.3d 959, 964 (9th Cir. 2003). To determine whether an officer's conduct is reasonable in light of the totality of the circumstances, courts may also consider the "quantum of force" used in the arrest, the availability of alternative methods of capturing or detaining the suspect, and the plaintiff's mental and emotional state. *Luchtel v. Hagemann*, 623 F.3d 975, 980 (9th Cir. 2010) (citations omitted). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.

### i.   *Sergeant Pickering's Liability*

Defendants argue that Mrs. Mack fails to establish Sergeant Pickering used excessive force because the body camera footage definitively shows that Sergeant Pickering acted reasonably during the encounter. (ECF No. 15-1 at 8.) The Court disagrees. It is true that when a video records the events in question, no genuine dispute of fact exists for anything that is clearly discernable in the recording even if sworn testimony in the records contradicts what the video shows. *Scott v. Harris*, 550 U.S. 372, 380–81 (2007); *see also Booke v. County of Fresno*, 98 F. Supp. 3d 1103, 1132 (E.D. Cal. 2015) (denying summary judgment on an excessive force claim because cellphone video clearly contradicted the officer's account of the incident); *Blankenhorn*

7

*v. City of Orange*, 485 F.3d 463, 468 n.1, 478–80 (9th Cir. 2007) (concluding that video footage clearly indicated there was a triable issue of fact for the plaintiff's excessive force claims). However, the body camera footage in this case does not provide "clearly discernable" evidence because it was shaky, unclear, and completely dark at critical moments. As such, the Court cannot conclude as a matter of law that Sergeant Pickering's use of force was objectively reasonable based on the footage alone.

Looking at the evidence in the light most favorable to Mrs. Mack and drawing all reasonable inferences in her favor, the Court concludes there is a genuine dispute as to whether Sergeant Pickering used unreasonable force. Sergeant Pickering was responding to a 911 call regarding public nudity, which is not a "severe" crime and arguably does not present an immediate danger. *See Graham*, 490 U.S. at 396. (ECF No. 19-1, SUF, at ¶ 9.) Although Mrs. Mack did approach Sergeant Pickering with her arms outstretched, the Court notes that she did not appear to approach in a threatening manner, have a threatening physicality, or have a visible weapon. As Mrs. Mack points out, she was over sixty and overweight at the time of the incident. (ECF No. 19 at 10.) Based on these facts, a reasonable jury could find that Mrs. Mack was not an immediate threat to Sergeant Pickering's safety. *See Graham*, 490 U.S. at 396.

There is also a genuine dispute as to whether Mrs. Mack was "actively resisting arrest." *Id.* As mentioned, the body camera footage does not show the encounter clearly, and there is conflicting testimony as to whether Mrs. Mack intentionally grabbed Sergeant Pickering's penis or whether she accidently touched him as he was arresting her. (*Compare* ECF No. 15-1 at 4–5 *with* ECF No. 19 at 10–11.) The trier of fact should resolve these "differing versions of the truth." *See First Nat'l Bank*, 391 U.S. at 288–89.

A reasonable jury could also disagree as to whether Sergeant Pickering used the appropriate "quantum of force" to create distance and detain Mrs. Mack. *Luchtel*, 623 F.3d at 980. Based on the body camera footage, it appears Sergeant Pickering shoved Mrs. Mack — an overweight woman in her sixties — to the ground and then aggressively handled her as she attempted to stand. (*See* ECF No. 16.) It also bears mentioning that Mrs. Mack stated in her deposition testimony that she was experiencing a mental health episode at the time. (ECF No. 19

at 9–11). A reasonable jury could find that based on Mrs. Mack's unusual behavior, she exhibited outward signs of being emotionally or mentally unwell such that Sergeant Pickering's use of force was even less reasonable. *See Deorle v. Rutherford*, 272 F.3d 1272, 1282–83 (9th Cir. 2001) ("The tactics to be employed against an unarmed, emotionally distraught individual who is creating a disturbance or resisting arrest are ordinarily different from those involved in law enforcement efforts to subdue an armed and dangerous criminal.").

In sum, the body camera footage is too unclear to allow the Court to find that Sergeant Pickering acted reasonably as a matter of law based on the footage alone. Beyond the footage, the Court is left only with the parties' conflicting declarations and deposition testimony, which provide differing versions of the encounter. Credibility determinations should be resolved by a trier of fact rather than by summary judgment. *See First Nat'l Bank*, 391 U.S. at 288–89. This is even more true for excessive force claims, and the Ninth Circuit has held on many occasions that summary judgment should be granted sparingly for such claims. *Glenn v. Washington*, 673 F.3d 864, 871 (9th Cir. 2011); *see also Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002) ("[W]e have held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly."); *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005) (en banc) (same). Based on the limited evidence before the Court, the Court finds there is a genuine dispute as to whether Sergeant Pickering used unreasonable force under *Graham*. Accordingly, the Court DENIES Defendants' motion as to Mrs. Mack's § 1983 claims against Sergeant Pickering.

>  ii.    *The Town and Police Department's Liability*

Defendants argue § 1983 does not allow for *respondeat superior* liability and a public entity may only be held liable for a constitutional violation caused by a policy, custom, or practice of the public entity. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690–91 (1978). Further, Defendants argue the Town cannot be held liable for a § 1983 violation even if its policies and practices were deficient because Sergeant Pickering acted reasonably during the incident. (*Id.* at 9–10.) Mrs. Mack does not respond to Defendants' *Monell* argument, and in fact, does not address municipal liability at all with regards to her § 1983 claim.

1  However, later in her opposition, Mrs. Mack asserts the Town is vicariously liable for Sergeant
2  Pickering's conduct pursuant to California Government Code § 815.2[5] and *respondeat superior*
3  principles. (*Id.* at 14.)
4  In *Monell*, the Supreme Court concluded "a municipality cannot be held liable *solely*
5  because it employs a tortfeasor — or, in other words, a municipality cannot be held liable under §
6  1983 on a *respondeat superior* theory." 436 U.S. at 691. Further, to the extent Mrs. Mack argues
7  the Town and Police Department may be held liable under California Government Code § 815.2,
8  her argument has been expressly rejected. *See Medrano v. Los Angeles*, 973 F.2d 1499, 1505 (9th
9  Cir. 1992) ("Section 1983 is an express federal damages remedy that cannot be expanded by state
10 law."). Accordingly, Mrs. Mack cannot recover damages under § 1983 based on vicarious
11 liability.
12 In order for her claim against the Town and Police Department to survive summary
13 judgment, Mrs. Mack must identify evidence showing Sergeant Pickering violated her
14 constitutional rights by executing a local government policy or custom. *Monell*, 436 U.S. at 690-
15 91. In this case, Mrs. Mack fails to produce any evidence indicating Sergeant Pickering acted
16 pursuant to a policy or custom endorsed by the Town or Police Department. Therefore, the Court
17 GRANTS Defendants' motion as to Mrs. Mack's § 1983 claim against the Town and Police
18 Department.

### B. Mrs. Mack's Negligence and Battery Claims

20 Defendants also move for summary judgment as to Mrs. Mack's negligence and battery
21 claims, arguing again that Sergeant Pickering did not use unreasonable force as a matter of law.
22 Defendants correctly argue that Mrs. Mack's negligence and battery claims require her to prove
23 Sergeant Pickering used unreasonable force. *See Campos v. City of Merced*, 709 F. Supp. 2d 944,
24 963 (E.D. Cal. 2010) (*quoting Munoz v. City of Union City*, 120 Cal. App. 4th 1077, 1102 (2004)
25 ("In order to prevail on a claim of battery against a police officer, the plaintiff bears the burden of

---

[5] Section 815.2 provides, "A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative." Cal. Gov. Code § 815.2.

proving the officer used unreasonable force."); *Fewell v. California*, No. CV 16-1934 DSF (JEMx), 2017 WL 6043080, at *7 (C.D. Cal. Apr. 11, 2017) (quoting *Hayes v. Cty. of San Diego*, 57 Cal. 4th 622, 629 (2013) ("Like the Section 1983 and battery claims, negligence requires proof of unreasonable use of force."). As already discussed at length, there is a genuine dispute as to whether Sergeant Pickering used unreasonable force. Therefore, Defendants cannot succeed on summary judgment for Mrs. Mack's negligence or battery claims.

Defendants also argue liability cannot be imputed to the Town. In opposition, Mrs. Mack argues the Town is vicariously liable for Sergeant Pickering's tortious conduct pursuant to California Government Code § 815 ("§ 815"). (ECF No. 19 at 14.) Section 815.2 "clearly allows for vicarious liability of a public entity when one of its police officers uses excessive force in making an arrest." *Blankenhorn*, 485 F.3d at 488; *see also Mary M. v. City of Los Angeles*, 54 Cal. 3d 202, 215 (1991) ("[A] governmental entity can be held vicariously liable when a police officer acting in the course and scope of employment uses excessive force or engages in assaultive conduct."). Here, the Town and Police Department do not claim that Sergeant Pickering was acting outside of the scope of his official duties.

For these reasons, the Court DENIES summary judgment as to all Defendants with regards to Mrs. Mack's negligence and battery claims.

### D. Negligent Infliction of Emotional Distress

Finally, Defendants argue Mr. Mack cannot recover for his negligent infliction of emotional distress claim because he failed to file a government tort claim as required by the California Government Claims Act ("the Act"). (ECF No. 15-1 at 14–15.) In opposition, Mr. Mack concedes and stipulates that he cannot establish his claim since he failed to comply with the Act. (ECF No. 19 at 15.) Accordingly, the Court GRANTS Defendants' motion as to Mr. Mack's negligent infliction of emotional distress claim.

### IV. CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment (ECF No. 15) is hereby GRANTED in part and DENIED in part as follows:

1. Defendants' Motion for Summary Judgment as to Mrs. Mack's § 1983 claim as to

        Sergeant Pickering is DENIED;

2. Defendants' Motion for Summary Judgment as to Mrs. Mack's § 1983 claim as to the Town and Police Department is GRANTED;

3. Defendants' Motion for Summary Judgment as to Mrs. Mack's negligence claim is DENIED;

4. Defendants' Motion for Summary Judgment as to Mrs. Mack's battery claim is DENIED;

5. Defendants' Motion for Summary Judgment as to Mr. Mack's negligent infliction of emotional distress claim is GRANTED; and

6. The parties are hereby ordered to file a Joint Notice of Trial Readiness within thirty (30) days of electronic filing of this Order indicating their readiness to proceed to trial and proposing trial dates.

        IT IS SO ORDERED.

DATED:  April 22, 2020

        Troy L. Nunley
        United States District Judge